Oyez, oyez, oyez. The Honorable Appellate Court, 5th District, State of Illinois is now in session. The Honorable Justice Cates presiding along with Justice Vaughn and Justice McKinney. The first case this morning is 522-0287, Country Mutual Insurance Company v. Xu et al. Arguing for the appellant is James Martinkus. Arguing for the appellee is David Jenkins. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for their argument. The clerk is permitted to record these proceedings. Good morning, gentlemen. Good morning, Your Honor. Good morning, Your Honor. Mr. Martinkus, you're for the appellant? I am, Your Honor. All right. You may proceed when you're ready. Thank you. May it please the court, counsel. I represent Gary Gang Zhu. He is the defendant in this action brought by Country Mutual Insurance Company. This is an insurance contract case. As I'm sure this panel knows, it is the duty of this court to review the contract de novo. It is for this court to determine as a matter of law whether or not there is or is not a duty to defend and or a duty to indemnify. So that's the starting point at which this case begins. And in order to make some sense of the case, it appears clear to me that we start with the policy and determining under the policy what is listed as coverage. The court may remember that there were two different policies. The only policy upon which I proceed is the umbrella policy. I'm not claiming there was coverage under the homeowner's policy. So our argument is limited to whether or not the umbrella policy provides coverage. If you look at the umbrella policy section one, it defines coverage as follows. We will pay on behalf of an insured for ultimate net loss in excess of the retained limit, which an insured is legally obligated to pay because of bodily injury, personal injury, or property damage. So that is in the disjunctive. And if in fact my client has action brought against him, that comes within any of those three categories, certainly there is coverage under the initial terms of the policy. Mr. Martinkus, isn't it true though that the umbrella policy only kicks in once the underlying policy has been exhausted? Yes, your honor, but that's only if there is coverage. And because country has is completely, you know, it's claimed there's never been any coverage under the homeowner's policy, that does not have any effect. It's only if there is a policy in place that has coverage. That's when the umbrella would say you got to pay all the money out for the coverage under the homeowner's policy. But because country has denied any coverage and we have elected to forego our claim, there is no coverage. And because there is no coverage, the only policy at issue is the umbrella policy. Are you saying that the umbrella policy kicks in before the underlying policy kicks in? I'm not. What I'm saying is that you first determine is there an underlying policy. And in this case, there's not. So in the absence of an underlying policy, the only policy at issue is the umbrella policy. But the umbrella policy is a kind of a policy that is designed to also have coverage for certain events that are not covered under the homeowner's policy. But it's not an independent, what I'm saying is an umbrella policy typically is not an independent insurance policy. It's only in existence. It only arises once there's coverage underneath with a homeowner's policy. Do you disagree with that? I think in general, you're exactly right. But I think when you look at the language in this policy, this policy is designed to protect my client in the event of a claim exactly brought by, in fact, Mr. Wang in underlying lawsuit. And I don't think the umbrella policy is limited to only those claims that are covered by the homeowner's policy. It is a situation where people get umbrella policies when they have automobile policies of a million dollars to cover other potential claims. And I think that's exactly what we have here. I do not think that the language of the policy says or excludes that you can only have coverage in the event that you have coverage under the homeowner's I don't believe it says that, Judge. That's my recollection. It simply says to the extent there is policy coverage with the homeowner's policy, you have to spend those funds prior to engaging any coverage under the umbrella policy. But I don't think you don't think that language to the extent there is coverage, you have to expend the funds. You don't think that ties the two together? I don't think it ties the two together in the sense of whether or not there's coverage. If there's coverage, I absolutely agree with the court that, yes, you would have to spend all the funds, disperse the funds under the homeowner's policy before you can look toward the umbrella policy. But I don't think it's narrowly read. And I know in the brief I've talked about various courts that have concluded that you really have to look at these policies in the best light for the insured. And I think if that's what they wanted to do, country could have made that very, very clear that there's no coverage whatsoever unless there is coverage under the underlying homeowner's policy. And that's not what they've said in the least. So with I think the underlying idea that courts look toward coverage, and certainly are going to give the benefit of the doubt to the policyholder, I would suggest to the court that this is a fair policy. And that's the DOMS court, Your Honor. That's what I was referencing. It's at page 14 of my brief. The DOMS court states the allegations must be liberally construed in favor of the insurer. So it's in that context that I believe that, no, it's not a precluding if in fact you don't have coverage. I hope that helps answer my position at least. Mr. Martinkus, so that seems like if your interpretation is correct, anything that would ordinarily not be covered or excluded, the umbrella policy would swoop in and take care of that. So if you intentionally burn down your house, there's no coverage. But because there's no coverage now, the umbrella policy reimburses your house. I don't think that's the case, Your Honor, only because the umbrella policy is very sort of claim that's brought can be covered. It's very clear. In fact, if you indulge me, Judge, it talks about bodily injury, personal injury, property damage. Personal injury is defined under the policy as false arrest, false imprisonment, wrongful eviction, wrongful detention, or malicious prosecution. One of the claims that Mr. Wang brought specifically in his complaint was that, in fact, Gary Zhu brought a baseless lawsuit. The baseless lawsuit is the same thing as a suit brought maliciously. And he alleges that. And that's one of the basis of his claim. The second component of personal injury is defamation of character. And here throughout his complaint, he says, my client threatened his reputation and standing in the community that, in fact, there were things that he did that's caused him all of these difficulties based upon negligence. He undermined- What's the status of the underlying claim? That was a federal complaint, correct? Yes, Judge. Well, from my client's perspective, he's very happy to report we had a week-long trial in federal court about 30 days ago. And he won everything. All three plaintiffs lost. Does that have any bearing on how this case should proceed? Well, it only has bearing to the extent that there probably now is no issue with respect to indemnification. I don't think it has any bearing with respect to whether or not the duty to defend was, in fact, in existence at the time this is brought. If you find that there was a coverage and the duty to defend was in place, then it is certainly a claim my client has to be reimbursed for the cost of defense that he had tendered to country of initial. Thank you. Sure. Your Honor, and I think also in the context of definitions, you have to look at occurrence. Occurrence is defined in the policy, quote, occurrence, an accident including continued exposure to conditions that result in bodily injury or property damage. It also says occurrence also means an act that results in one of the offenses listed in the definition of personal injury. I just made reference to the two things I believe are clearly set forth, malicious prosecution, defamation of character. So you have an occurrence under the policy. You have a personal injury definition that clearly is consistent with the claims brought by Professor Wang. And I know the court realizes too, all I have to do is to show there's one claim, one coverage, and the duty to defend is as to all. So I do think that both under the terms of the policy, you have both personal injury, including defamation, malicious prosecution, reputation damage, and occurrence is defined as one of the definitions that are set forth into the actual complaint itself. If you then look at the potential exclusions, country initially said there's no coverage whatsoever, but if perhaps there is coverage, well, you have two exclusions. They have a mental abuse exclusion based upon bodily injury. There's no possible theory by which that could be an exclusion because that claim, that exclusion is based upon the concept of bodily injury. We're not on the bodily injury, we're on personal injury as defined in the policy. So that exclusion can, under no theory, can have any effect. And then the second one is business exclusion. But again, there's zero alleged by Wang claiming that this Mr. Gary Geng Xu's business was at issue. This had nothing to all that, in fact, he exposed my client for extracurricular activity with respect to students, nothing to do. So there's no exclusion that, in fact, in my view, would have any bearing. And I also think it's very important, Judge, to look at section 200 exclusions. It says, if suit is brought against any insured with respect to a claim for acts or alleged acts falling within the coverage of this policy, seeking both compensatory and punitive or afford a defense to such action. So here you have right in the policy, a bold statement that completely says, if you're sued under a theory that would be entitling the plaintiff to punitive or exemplary damages, we're still going to defend you. And that's exactly what you have here. We have a claim for compensatory damages under Wang's negligence claim. It's a negligence claim. That's what he claimed. He alleged things that are specifically addressed under the policy is subject to coverage. And now you have this exclamation, we'll even cover you if it's basically conduct that's intentional. Certainly, the malicious prosecution one is covered. That's obviously going to be argued that's intentional, but it's covered under the policy. And then this exclusion, if you're not going to pay punitive, but you'll pay compensatory and you'll afford a defense when the claim is both compensatory and punitive. I don't understand how that could not be entitled to coverage. Mr. Martinkus, with regard to that coverage, is there anything like that language in the underlying policy? Judge, the reasons we didn't go after the underlying policy is because I don't think it is. I think your point's well taken that there is not that capture of all claims under that policy. So I think they could legitimately argue that the nature of the claim brought by but the personal umbrella policy is so different. It is so broader with respect to the coverage. And that's why we're going under the personal umbrella policy. So is your argument that the umbrella policy actually purchased more insurance than the underlying policy? Yes. Yes. It clearly does because it expands policy coverage that was not ever deemed to be covered under the homeowner's policy. So it has to. Otherwise, why is my guy paying premiums? He's paying premiums for conduct that might be excluded under the homeowner's policy, but now is being included with respect to any of these sorts of claims. So the personal injury policy that, in fact, is set forth within this policy clearly is coverage of items and events and claims that may or may not have been covered under the homeowner's policy. And again, Judge. So even if your argument is correct that he bought more coverage through the umbrella policy, count 10 of the federal complaint alleged negligent infliction of emotional distress. That's correct. But the allegations in that particular count were pretty vague. They didn't look at what there was alleged. And I don't disagree with you, but it clearly does say that he alleges that my client caused him reputational harm in the community and he brought a baseless lawsuit. One of the specific claims of coverage is malicious prosecution. If Mr. Zhu is charged by a plaintiff with malicious prosecution, that is a covered item under this particular policy, not under the homeowner's policy. And that's exactly what he brought. He brought a claim that, hey, my client sued him in China with a baseless lawsuit. And therefore, it is a claim that he is claiming he is negligent bringing it is baseless. He has different claims that certainly comport with what I believe is the language set forth in the policy. So I appreciate your question, Judge. I hope I'm answering him okay. Again, just a couple points. I don't have much time left. But under the case of Pekin Insurance versus Wilson, it's clear, as I mentioned earlier, that this is a de novo review. It's up to the court to do this. And basically, there's no question also under DOMS that there's a huge separation from the duty to defend versus the duty to indemnify. And courts have clearly said that the duty to defend is so much more broad than the duty to indemnify. And that's what we have here. We have a claimant who's clearly made a claim within the policy coverage of the umbrella policy. They have a duty to defend. They may or may not ever have had a duty to indemnify, but the duty to defend is there. And again, DOMS says it's the allegations must be liberally construed in favor of the insured. It's only in a rare case where a court can be so confident the allegations could not possibly be considered to describe negligent conduct. So that's what my whole point is. And I present my case. Okay, thank you, Mr. Martinkus. You will have some time after Mr. Jenkins' argument for rebuttal. Mr. Jenkins, you ready to proceed? I am, Your Honor. Thank you very much. May it please the court, counsel, once again, good morning. My name is David Jenkins. Let me interrupt you one second. We'll stop the clock just a moment. Just a moment. If we could stop the clock. I was negligent myself. I didn't extend the courtesy to Justice Vaughn and Justice McKinney to see if they had any questions of Mr. Martinkus. So I want to do that now. No questions. No other questions. Okay, I apologize. Sorry. It's early in the morning yet. Okay, Mr. Jenkins, go ahead and proceed. Thank you. Thank you, Your Honor. Once again, my name is David Jenkins. I'm representing the plaintiff appellee, Country Mutual Insurance Company. We're asking that the summary judgment be affirmed below because Country Mutual did not have a duty to defend D'Souza in connection with this lawsuit. Judge Baum was correct to conclude that there was no coverage for this underlying complaint because it only alleged intentional conduct, which was not covered by any of these policies, and because certain policy exclusions, which we do believe apply in this case. No matter how you look at this underlying complaint, Judge, it's all alleging non-accidental intentional conduct designed to harm the other party. Now, all we have to go with are the allegations of the complaint. There's nothing in there remotely suggesting that there was an accident. I'll briefly address Justice Kate's questions on the policies. We kind of see it as a non-sequitur. The same reasons there was no coverage under the umbrella policy apply to the underlying policy. So, if they're saying that there's coverage, then for a bodily injury and an alleged negligence in the count 10, they first have to exhaust their underlying insurance before the homeowner's policy applies. I think the coverage is, the reason you get the homeowner or the umbrella policy is because it's excess, basically. If other insurance is out there and those are either exhausted or not existent, then the other policy comes in. It's a much cheaper premium. So, you're not buying larger coverage by getting an umbrella. It's really the last resort policy that's going to come into play. But what we have here, Judge, is that the policy requires an occurrence. And as a matter of law, an occurrence has to be an accident, not intentional conduct. And I want to make something very clear here. The definition of occurrence in the policy requires there to be an accident, whether it's bodily injury, property damage, or a personal injury. Because first and foremost, the policy says an occurrence is an accident. And the reason that's so is because policies of insurance cover fortuities. They're there to protect against things that happen by accident that you're not planning for. But when a person plans for and conducts intentional conduct or tries to harm people, it's basically against public policy to cover that. In other words, if Zu was correct that there was no requirement for there to be an accident for the personal injury claim, then he could lock these women up in the basement, which would be a false imprisonment, intentionally and say, well, I'm going to let my insurance take care of the liability. So there still has to be an accident for the personal injury coverage to apply. So the defamation claim, if there was one, which we don't believe there is any claim for defamation here, but if there's any suggestion of defamation, it still has to be an accident. So publication of you know, they didn't know it was false or they didn't investigate the information, that may be an accident. But what we have alleged here in this case is nothing. Mr. Jenkins, your definition of accident, as you just gave it, is negligence. You know, you didn't know, whatever. And is the word accident actually in the umbrella policy? Yes, the umbrella policy, the definition of occurrence, the very first sentence starts out an accident. And then it says, including continued exposure. So the first and foremost, you have the accident requirement. And then in addition, it says it also an offense that's listed in personal injury. So we do have personal injury coverage in the umbrella policy, which would be, let's say, a defamation claim. But the defamation, that's not an accident. Then if it's not an accident, if it's intentional, it's not covered, it's not an occurrence. And as a public policy, your definition under the umbrella policy doesn't limit itself to, for example, a car accident. It's much broader than that. Well, as I would say that the case law, and we've said in our brief, defines an accident as an unforeseen occurrence, an undesigned, sudden or unexpected event of an inflictive or unfortunate nature. So if it's something that's unexpected, undesigned, unforeseen, an accident doesn't exist if it's by design or if the injury is done by design. Like for here, paragraph 11 of the complaint specifically says, Zhu is furious with Wang. He launched a counter attack trying to undermine his professional reputation. So if that's a defamation claim, again, which we don't believe it is, it's a designed claim. It's intentional conduct that's out there to harm Wang. We also have alleged, and I think it's important here, that even if this, you know, we look at this, this does not allege a cause of action for defamation. There's no libel claim. There's no malicious prosecution claim. The complaint does not allege these elements of a cause of action, and I don't believe Zhu has cited a single case finding coverage without there being some cause of action alleged for these alleged offenses, which we also believe is tied into the policy because it requires that there be an act constituting an offense. So there has to be an act in here of defamation, of malicious prosecution that he was being sued for, which we don't believe is the case. And third, because there's no accident, there's no allegation of defamation. And third, we point out there's an exclusion in the policy, exclusion C. And exclusion C in the policy says that if there is allegations of the publication of material that's false, there's no coverage for personal injury arising out of the oral or written publication of material if done with the insured's knowledge of the falseness. That exclusion C applies to the personal injury claim. So all of the alleged allegations, if we say, okay, there's something in there that is defamation, or there's something in there that's malicious prosecution, it was all done allegedly with the knowledge that it was about Wayne. So this wasn't an innocent event. It was done with knowledge. So we have three different reasons why each of these so-called defamation or malicious prosecution or whatever just are not covered by this umbrella policy. And my refrain is- Mr. Jenkins, you keep talking about coverage. We're talking about duty to defend, which is a different animal here. Also, the term personal injury in the umbrella policy includes false arrest, false imprisonment, wrongful eviction, which would require some intent, I would think, wrongful detention, or malicious prosecution. That's not an accident. So your term that there's an accident required, I think it's falling flat on me. But what do you say about the duty to defend that this was purchased specifically in addition to the underlying homeowners policy? Well, again, as an umbrella policy, it is purchased to apply when other policies are either exhausted, or if there's maybe no coverage for some event. But on the duty to defend, Your Honor, one thing is very clear, because we've cited many, many cases in the brief that are on the duty to defend. The duty to defend does not exist if these allegations are intentional conduct. And so the State Farm v. Waters case, which is the 5th District case from 1994, there was no coverage for negligent infliction of emotional distress cause of action, because it was based upon allegations of sexual misconduct or sexual abuse. In Pekin v. Dial, again, this district found there's no duty to defend. Actually, both of these cases reversed the trial court, saying there was no duty to defend when there was allegations of alleged negligence, because the complaints only alleged someone fondled someone or touched somebody. These were intentional acts of conduct, including the negligent infliction of emotional distress claim. And we have many others like the Farmers v. Vago cases that they deal with the duty to defend. And that if the allegations cannot be read any other way other than intentional, then there's no coverage. It's not an accident. Well, on these claims like, you know, the false arrest judge, the act of an arrest and putting someone who's, let's say, a mistaken identity, they may be in an intentional tort. But what the cases look at is, is there an intent to harm? If the alleged allegations in the complaint is that there's an intent to harm the person, that's not an accident. If it was a mistake, but an intentional act, it still may be covered. But this complaint says specifically that all of the actions that were taken by Zhu were done to harm Wayne and to hurt his reputation and to, you know, basically cause the emotional distress. So the way we look at this complaint, there's no allegations in there of anything other than intentional conduct. But we'll, and the other, let's go to the business exclusion real quick, because I see my time is somewhat running down. Judge, we believe that the exclusion for personal injury. Are you talking about the business exclusion now in the underlying policy? No, it's in the, it's in the umbrella policy, Judge. The umbrella policy has an exclusion for personal injury arising out of the business pursuit of an insured. And the exclusion, it's a, I think it's a A14 in the appendix. The exclusion applies to personal injury arising out of a business pursuit. Every, the entire complaint is based upon Zhu's position as a professor at the university, his attempts to retaliate against Wayne, for Wayne's exposure of his mistreatment of students. He, Wayne, I'm sorry, Zhu apparently didn't want these allegations of misconduct following him around in his business, in his profession. And so what we're claiming here is that none of the allegations here are anything other than a part of his business pursuit, whether he's, he's trying to protect his business reputation as a professor and that's his employment. So we do believe that the exclusion for business pursuit applies. We also believe that we have the mental abuse. Again, the baseless lawsuits supposedly filed in China or the alleged statements that are in this complaint were all done according to the complaint to cause the mental harm and distress that's alleged against Zhu. Count 10 doesn't have any allegations of negligence other than the, the caption and the recitation of the elements. The, Wayne says all of this intentional conduct is the breach of a duty, but it's intentional conduct. Nonetheless, an intentional conduct is not covered by the policy under any definition. So judge, I'd like to stand on the, unless there's any other questions from the court, I'd like to stand on the bridge for the remainder of the argument. And some, as we discussed, there's only intentional conduct alleged there's no defamation claim, no cause of action for defamation. Even if there were exclusion, see precludes any covery for any of this because the allegations are of knowing, uh, you know, knowing statements that were false and exclusions see clearly applies and the other business pursuit exclusions apply. Your honor, we ask that the summary judgment be affirmed. Thank you very much. Thank you, Mr. Jenkins. Just any questions, Mr. Jenkins, Mr. Martin has said that the underlying case is over. Now the federal case is over in his client one. Do you think that has any bearing on how this court should proceed? In fact, I was unaware of that fact until this morning. So maybe I should have kept an eye on that more. Uh, it certainly the duty to indemnify would certainly be, uh, you know, moot at that point in time. I have to agree that, you know, if the question is duty to defend, there's now going to be a question, you know, what was the scope of that defense? If, if all the allegations in this, you know, so if only a little tiny sliver is supposedly covered by this policy. So it doesn't move the case on the duty to defend because there's still a question of the defense costs. So thank you, just as McCain. No questions. Okay. Thank you, Mr. Jenkins, Mr. Martin. Yes. And furtherance of justice bonds question peppers answers that question. The Illinois Supreme court finds if the underlying complaints alleged several theories of recovery against the insured, the duty to defend arises, even if only one such theory is within the potential coverage of the policy. So if you have one theory, it's the duty to defend everything. And I think that's exactly what took place here. Mr. Jenkins keeps arguing the allegations of son and Joe in terms of sex and all this, these sorts of conduct, it is irrelevant and has nothing to do with the claim that in fact, the policy gives coverage with respect to Wang's claims. And I'd also suggest to judge case that I think your question that you asked me early on is now answered too, because Mr. Jenkins admitted that there is coverage under the umbrella policy, either if in fact it's excess or quote, no coverage for an event is in the homeowner's policy. So Mr. Jenkins answered your question. And that's exactly what I've been saying that in fact, if there's no coverage in the underlying homeowner's policy, you certainly have coverage here. Mr. Jenkins argued that occurrence is an accident repeatedly, and only at the end of your discussion, did he admit that occurrence also means an act that results in one of the offenses listed in the definition of personal property. And again, without belaboring it, there's no question that malicious prosecution would certainly have the tone of an intentional act, defamation of character, the claim clearly, it doesn't say it has to be based upon libel or slander, because under the personal injury definitions, libel and slander are distinct claims. Defamation character in the context of this negligence claim brought by Mr. Wang is clearly covered. So you have, in my view, clear coverage of this case. And I think that the attempts to suggest somehow that these exclusions would apply are not well taken at all. One, I argued earlier, bodily injury is not the issue. This is personal injury, which is defined totally separate. And to suggest somehow that the nature of the claims here are within his business, I don't think is a valid argument at all. You can't argue that the allegations of Sunan Zhao are within the scope of a professor at the University of Illinois. They're clearly not. There are certainly events and claims outside of the claims that Mr. Wang made are clearly not claims like Zhao and Sunan, where there's this sexual component. It has nothing to do with it. He claims that my client was negligent in the way he reacted to the posts that he himself posted in China, in which he was the one who's defaming my client. And he claims those are malicious. And he was harmed. I believe this coverage in this case, I don't think it's that close a call, frankly. And I certainly defer to any questions the court may have. Thank you, Mr. Martinkus. Justice McKinney? No further questions. Justice Vaughn? No other questions. Thank you. All right, gentlemen, thank you both for your arguments today. This matter will be taken under advisement. We'll issue an order in due course. Thank you very much. Have a great day. You too. Thank you. In the photographs, I don't see any defective conditions of the photographs of the rug. Plaintiff has failed to offer any evidence that the mere existence of a rug in a vestibule is in itself dangerous or unreasonable. There's no evidence that the rug was not properly adhered. As the justices have pointed out, there's no evidence that it moved or any such as a result of this fall or just prior to the fall. So there's really no evidence that the rug itself was an unreasonable condition. The missing area of linoleum, linoleum is a very thin substance. In the photographs, it clearly shows a vertical displacement from this very small missing patch of less than a quarter of an inch. And there's just no evidence that any of these conditions are fall. Ultimately with that, I think we have addressed each of our four arguments that we put forth at the trial court and which are now before the court here on the de novo review. And unless the justices have any further questions, I will leave it at that and ask that the summary judgment in favor of the defendant be upheld. Justice Vaughn, any questions? No other questions. Thank you. Justice McKinney? No, thank you. Thank you. Thank you, Mr. Van Reeden. Mr. Tobin, rebuttal? Yeah, I just want to point out that the issue that defense counsel brought up in this case with regard to three things he possibly could have fell on the tile linoleum rug, the tile and linoleum, those are the same thing. The tile is made of linoleum, so it's the same thing. And his foot came down right in that area. The right foot came down right in the area where the tile and rug was. So just wanted to clear that up. With regard to the lower levels order, granting the summary judgment, the trial court found that there was no fall on defendant's premises. And I think the video clearly shows that his right foot comes down and it kicks back up, which started the process of his fall. So I think the trial court essentially takes the stance that there was no fall on defendant's premises, so the defendant cannot be liable. But I... The order doesn't say there was no fall. The order says there's no evidence of the plaintiff tripped. Okay. Well, I think that it clearly shows that he tripped on the defendant's premises with his right foot as his leg gets kicked back. So I think that there's certainly a question of fact for the jury to decide there, especially when you're viewing the evidence in the most trial court, what's mistaken. And that's why we're here asking for relief in front of the appellate court. I think that I addressed all the issues in my initial conversation with you guys. If you guys have any follow-up questions for me, I'd be happy to answer them. But otherwise, I'll stand on my previous oral argument and my brief. All right. Thank you, Mr. Tobin. Justice McKinney, any questions? No questions. Justice Vaughn? No, thank you. All right. That concludes the argument in this case. We'll take the matter under advisement. We'll issue an order in due course. Thank you both for your arguments today. Have a great day.